50 F.3d 16
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tammanoon SOUVANNAVONG; Porjanart Potjanakorn Souvannavong,
Petitioners,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70408.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 10, 1995.
Decided March 15, 1995.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and FITZGERALD, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioners Tammanoon Souvannavong and Porjanart Potjanakorn Souvannavong petition for review of the Board of Immigration Appeals' (BIA or the Board) decision denying them suspension of deportation under Sec. 244(a) of the Immigration and Nationality Act (INA), 8 U.S.C. Sec. 1254(a), for lack of extreme hardship. We have jurisdiction of the final deportation order under Sec. 106 of the INA, 8 U.S.C. Sec. 1105a(a). We deny the petition.
 
 BACKGROUND
 
 4
 Tammanoon and Porjanart Souvannavong are brothers who were born in Thailand in 1968 and 1969, respectively. Upon the separation of their parents, their biological mother took them to Laos to stay with relatives, the Souvannavongs. The Souvannavongs allegedly adopted both boys in Laos, in 1971. In 1975, the Souvannavongs fled to Thailand to escape the communist insurgency. When the Souvannavongs left Thailand for the United States, the Souvannavongs were permitted to take only four children with them, and they had three of their own. The Souvannavongs did not want to split up the boys, so they left both boys with their biological mother in Thailand. The Souvannavongs emigrated to the United States and became naturalized citizens.
 
 
 5
 In 1982, the Souvannavongs returned to Thailand to find the petitioners. The Souvannavongs claim they attempted to obtain the boys' adoption papers from Laos but were unable to because the records were destroyed during the insurgency. The Souvannavongs supposedly re-registered the boys' adoption in Thailand, and, in 1984, they brought both boys with them to the United States on tourist visas. In 1985, the Souvannavongs petitioned for immediate relative visas (I-130) for both boys. These petitions were denied in 1987 on the ground that the registration of the adoptions was fraudulent. In this regard, we quote from the January 26, 1987 finding of the District Director, a finding explicitly adopted by the Board on April 20, 1989:
 
 
 6
 The evidence of record reveals that the beneficiary cannot be considered your legally adopted child for immigration purposes, as discussed in the "Notice of Intent to Deny" dated July 25, 1986, since an investigation by the Officer in Charge at the American Consulate in Bangkok, Thailand revealed that the adoption does not comply with the law, and that the document itself is fradulent [sic].
 
 
 7
 In letters of August 12, 1986 and October 23, 1986 your attorney requested additional time for your to try to obtain legitimate documents to support your claim that the adoption of the child was bonafide [sic]. An additional five months have been allowed for your response as a result of these requests, but no further evidence has been submitted. Therefore it is determined that the beneficiary is ineligible for classification as your "child" for immigration purposes.
 
 
 8
 A.R. at 214. In 1989, the boys' appeal was dismissed by the Board of Immigration Appeals. Apparently they did not seek review of this denial. Thus the Board's determination is binding on the petitioners in this case.
 
 
 9
 In December 1990, the INS issued Orders to Show Cause, charging the brothers with deportability because they had stayed in the U.S. longer than their visas allowed. At their hearing before the immigration judge (IJ), the brothers conceded they were deportable under 8 U.S.C. Sec. 1251(a)(2). The brothers sought suspension of deportation under Sec. 244(a)(1), 8 U.S.C. Sec. 1254(a).
 
 
 10
 The IJ granted the Souvannavongs suspension of deportation, finding that they had met all the necessary requirements, including a showing of extreme hardship: "[The Souvannavongs] have established that their deportation would result in extreme hardship to themselves on the basis that they have been educated in the United States and have been totally acclimated to the United States sociologically and culturally." A.R. at 73. The INS appealed the IJ's grant of suspension of deportation, and the BIA reversed the IJ's finding. The Souvannavongs now petition for review.
 
 ANALYSIS
 
 11
 A. Statutory Framework.
 
 
 12
 The Souvannavongs seek a suspension of deportation under Sec. 244(a) of the INA, 8 U.S.C. Sec. 1254(a). Under Sec. 244, to qualify for a suspension of deportation, an alien must show (1) continuous physical presence in the United States for a period of at least seven years immediately preceding the date of application, (2) good moral character, and (3) "extreme hardship" to himself or herself, or to a spouse, parent, or child who is a citizen or a permanent resident of the United States. 8 U.S.C. Sec. 1254(a)(1).
 
 
 13
 B. Standard of Review.
 
 
 14
 We review for an abuse of discretion a decision by the Board of Immigration Appeals to deny an application for the suspension of deportation for lack of "extreme hardship." See Hassan v. INS, 927 F.2d 465, 467 (9th Cir.1991).
 
 
 15
 The BIA has the authority to "construe 'extreme hardship' narrowly." INS v. Wang, 450 U.S. 139, 145 (1981). However, "this court has required the Board to 'state its reasons and show proper consideration of all factors when weighing equities and denying relief.' " Hassan v. INS, 927 F.2d at 467 (quoting Mattis v. INS, 774 F.2d 965, 968 (9th Cir.1985)). Failure to consider all pertinent facts supporting extreme hardship, or failure to articulate the reasons for denying suspension of deportation, is an abuse of discretion. See Roe v. INS, 771 F.2d 1328, 1333 (9th Cir.1985). "Because hardship depends on specific circumstances, discretion can be properly exercised only if the circumstances are actually considered." Santana-Figueroa v. INS, 644 F.2d 1354, 1356 (9th Cir.1981) (citation omitted).
 
 
 16
 C. Discussion.
 
 
 17
 Both the IJ and the BIA found that the Souvannavongs met the first two requirements of INA Sec. 244, continuous presence for seven years and good moral character. The question on appeal is whether they have made a showing of extreme hardship.
 
 
 18
 1. Hardship to the Adoptive Mother.
 
 
 19
 The Souvannavong brothers argue that the BIA abused its discretion in not considering hardship to their "adoptive mother." Under the INA Sec. 244(a)(1), petitioners may show hardship as to a parent as well as to themselves. 8 U.S.C. Sec. 1254(a)(1). The BIA did not consider the hardship to the "adoptive mother," however, because the BIA had already determined in a previous proceeding--from which no review was sought--that the brothers had not been adopted. In fact, the alleged adoption was construed to have been fraudulent. Accordingly, the BIA did not err when it refused to consider the consequences of deportation on the brothers' "family."
 
 
 20
 2. Hardship to the Petitioners.
 
 
 21
 We conclude that the BIA did not abuse its discretion when it determined based "upon independent review of the record of proceedings, the appellate argument of both parties, [and] the evidence of record and transcripts, that both respondents failed to demonstrate the statutory requirement of extreme hardship."
 
 
 22
 The BIA's opinion correctly considered as a whole all the elements of hardship the brothers presented, both collectively and individually. The BIA's opinion addressed each relevant hardship factor and concluded that each did not amount to extreme hardship. The opinion addressed in detail the economic, emotional, psychological, cultural and educational hardships the Souvannavongs might face upon deportation to Thailand, and by referring to those factors in the plural, i.e., "circumstances" and "hardships," we are satisfied that the Board considered the cumulative effects of the hardships in the aggregate as required by Santana-Figueroa, 644 F.2d at 1357. Accordingly, the petition for review is DENIED.
 
 
 23
 PREGERSON, Circuit Judge, dissenting.
 
 
 24
 I respectfully dissent. I think we should have remanded this case because the BIA made two procedural errors.
 
 
 25
 First, the BIA misconstrued the findings of the IJ on the question of the adoptive mother's hardship. The IJ said he would not consider testimony by the adoptive mother because he found that the brothers were emancipated. The BIA misstated the IJ's reasons for not considering hardship when it alleged that "[b]ecause the respondents' adoption was fraudulent, the immigration judge correctly ruled that the consequences their deportation would have on their adoptive family was an impermissible line of inquiry." E.R. 10-11. The fact of the matter is that the IJ made no such finding in this action.[1] The BIA's reversal, therefore, seems to be based in part on an incorrect reading of the IJ's findings.
 
 
 26
 Second, the BIA did not consider cumulatively, as it must, all the evidence of hardship that the petitioners presented on the issue of extreme hardship. See Prapavat v. INS, 662 F.2d 561, 562 (9th Cir.1981) ("[A]dverse consequences of deportation are to be considered cumulatively in determining whether 'extreme hardship' exists.") (emphasis in original); Santana-Figueroa v. INS, 644 F.2d 1354, 1357 (9th Cir.1981) ("Even if the petitioner had established only that he would incur economic detriment, the Board should have considered this detriment together with hardship from non-economic sources."). The BIA analyzes each claim of hardship and states that each does not rise to the level of extreme hardship. But nowhere does the BIA address the cumulative effect of all the hardships--economic, emotional, psychological, cultural, and educational--that it addresses individually.[2]
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The IJ did consider the question of visa fraud, finding the boys innocent, E.R. at 72, but that is an entirely different issue
 
 
 [2]
 There is one reference on page three of the BIA's decision to the consideration of facts "in the aggregate," but that sentence describes what the INS argued, not what the BIA found