**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 24, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KAREN SAMANTHA ROBLES-
GARCIA,

     Petitioner,

v.

WILLIAM BARR, United States Attorney
General,

     Respondent.

No. 18-9511

_____

**Petition for Review of an Order from the Board of Immigration Appeals**
_____

Aaron Elinoff, Elinoff & Associates (Danielle C. Jefferis, with him on the supplemental brief), Denver, Colorado, for Petitioner.

Chad A. Readler and Joseph H. Hunt, Acting Assistant Attorneys General, Civil Division, Kohsei Ugumori, Senior Litigation Counsel, and Aric A. Anderson, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., on the briefs for Respondent. [1]
_____

Before **HARTZ**, **EBEL**, and **McHUGH**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

[1] Although the panel heard argument on this petition for review, Respondent's counsel was unable to appear due to a medical emergency. Respondent's counsel filed a brief written response to Petitioner's counsel's oral argument, and Petitioner's counsel has replied.

Petitioner Karen Robles-Garcia, a Mexican citizen unlawfully in the United States, was ordered removed. She challenges that removal order in two ways. First, relying on Pereira v. Sessions, 138 S. Ct. 2105 (2018), Robles-Garcia argues for the first time that the immigration judge ("IJ") who initially presided over her removal proceedings never acquired jurisdiction over those proceedings because the Department of Homeland Security ("DHS") initiated those proceedings by serving Robles-Garcia with a defective Notice to Appear. Because Robles-Garcia has not yet made that argument to the IJ or the Board of Immigration Appeals ("BIA"), it is unexhausted and we, therefore, cannot address it in the first instance here. Second, Robles-Garcia contends that the BIA erred in concluding that she was ineligible to apply for discretionary cancellation of removal. We uphold that determination because Robles-Garcia was unable to show that her theft conviction was not a disqualifying crime involving moral turpitude. We, therefore, DENY Robles-Garcia's petition for review challenging the BIA's determination that she was ineligible for cancellation of removal, and we DISMISS the petition for lack of jurisdiction to the extent that it asserts the Pereira question.

## I. BACKGROUND

In 1991, at age three, Robles-Garcia was admitted to the United States as a nonimmigrant visitor authorized to remain in this country for up to seventy-two hours and to travel within twenty-five miles of the Mexican border. She stayed longer and traveled further than permitted. In 2008, DHS served Robles-Garcia with a Notice to Appear ("NTA")—the document that DHS issues an immigrant to initiate removal

2

proceedings—charging her with violating her visitor permissions from almost seventeen years earlier. Robles-Garcia admitted the five factual allegations charged in the NTA and conceded she is removable. But she applied for cancellation of removal and adjustment of her status, asserting that her removal would work an "exceptional and extremely unusual hardship" on her two children, 8 U.S.C. § 1229b(b)(1)(D), who are U.S. citizens. To be eligible to request such discretionary relief from removal, however, Robles-Garcia had to show, among other things, that she did not have a conviction for a crime involving moral turpitude ("CIMT"). See 8 U.S.C. § 1229b(b)(1)(C) (applying 8 U.S.C. §§ 1182(a)(2), 1227(a)(2)). The IJ determined that Robles-Garcia had failed to show that her 2007 theft conviction was not a CIMT; the BIA upheld that determination. Our review here is of the BIA's decision. See Sarr v. Gonzales, 474 F.3d 783, 790 (10th Cir. 2007).

## II. ANALYSIS

### A. We lack jurisdiction to consider Robles-Garcia's unexhausted Pereira argument

As an initial matter, before this court Robles-Garcia now asserts for the first time a new argument challenging the BIA's order removing her from the United States. While her petition for review was already pending before us, the Supreme Court decided Pereira v. Sessions, 138 S. Ct. 2105 (2018). Pereira addressed an NTA that failed to give statutorily required notice of the time and place for the removal proceedings, see 8 U.S.C. § 1229(a)(1)(G)(i), holding that NTA was inadequate to trigger a statutory stop-time rule. Pereira, 138 S. Ct. at 2109-10. Based on Pereira,

3

Robles-Garcia argues for the first time here that the NTA that DHS served her was similarly deficient and, therefore, was inadequate to vest the IJ with jurisdiction over these removal proceedings. Because Robles-Garcia has not yet raised that argument to the IJ or BIA, it is unexhausted and we, therefore, cannot address it here.

"A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). The Tenth Circuit has applied this statutory exhaustion requirement to conclude that "[t]he failure to raise an issue on appeal to the [BIA] constitutes failure to exhaust administrative remedies with respect to that question and deprives the Court of Appeals of jurisdiction to hear the matter." Rivera-Zurita v. INS, 946 F.2d 118, 120 n.2 (10th Cir. 1991) (emphasis added); see also Lucio-Rayos v. Sessions, 875 F.3d 573, 579 n.9 (10th Cir. 2017). This exhaustion requirement is based generally on "a fundamental principle of administrative law that an agency must have the opportunity to rule on a challenger's arguments before the challenger may bring the arguments to court." Garcia-Carbajal v. Holder, 625 F.3d 1233, 1237 (10th Cir. 2010). See generally City of Arlington v. FCC, 569 U.S. 290, 293, 296-301, 307 (2013) (holding courts should afford Chevron[2] deference to agency's determination of its statutory authority to act when that statute is ambiguous).

---

[2] Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837 (1984).

4

Here, then, because Robles-Garcia has not yet made her Pereira argument to the IJ or the BIA, we lack jurisdiction to consider it.  We reach this conclusion with some reluctance, for several reasons.

First, the Supreme Court has warned us that we should be sparing in our use of the word "jurisdiction."  See Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 1848-50 (2019); Gonzalez v. Thaler, 565 U.S. 134, 141-42 (2012); see also Sky Harbor Air Serv., Inc. v. Reams, 491 F. App'x 875, 891 n.17 (10th Cir. 2012) (unpublished) (listing some of the Supreme Court cases "differentiating between 'jurisdictional' and 'claims processing' rules").

Second, the statute at issue here requiring exhaustion, 8 U.S.C. § 1252(d)(1), does not use the term "jurisdiction."  See Gonzalez, 565 U.S. at 141-42 (recognizing "principle" that "[a] rule is jurisdictional if the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional," "[b]ut if Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional" (internal quotation marks, alteration omitted)).

Third, we have previously created exceptions to this so-called "jurisdictional" exhaustion requirement, and we have recognized the possibility of other exceptions,[3]

---

[3] See Sidabutar v. Gonzales, 503 F.3d 1116, 1118-22 (10th Cir. 2007) (recognizing exception to exhaustion where BIA sua sponte raised and addressed issue); id. at 1121 n.5 (suggesting DHS might be able to waive exhaustion); Garcia-Carbajal, 625 F.3d at 1240 n.** (assuming, without deciding, that court of appeals can waive exhaustion under § 1252(d) if exhaustion would be futile, but holding exhaustion would not be futile in that case in any event); Batrez Gradiz v. Gonzales, 490 F.3d

5

further suggesting that exhaustion under § 1252(d)(1) is not really a jurisdictional requirement, but is instead more of an issue of deference or comity left to our discretion to exercise or not. See Bowles v. Russell, 551 U.S. 205, 213-14 (2007) (stating that Supreme "Court has no authority to create equitable exceptions to jurisdictional requirements").

Of course, it is completely appropriate for the BIA to use its expertise to address and decide an issue first. But here the BIA, in another case, has already addressed and rejected the same Pereira argument that Robles-Garcia is now asserting. See In re Bermudez-Cota, 27 I&N Dec. 441 (BIA Aug. 31, 2018). So, too, has the Tenth Circuit. See Lopez-Munoz v. Barr, 941 F.3d 1013, 1014, 1017-18 (10th Cir. 2019). In light of these rulings, if we had discretion, we might decide that it would be most expedient for us to address Robles-Garcia's unexhausted Pereira argument now. Nevertheless, our cases make clear that we cannot do so because failure to exhaust an issue, as § 1252(d)(1) requires in the immigration removal context, deprives us of "jurisdiction" to consider that issue. See, e.g., Lucio-Rayos, 875 F.3d at 579 n.9; Rivera-Zurita, 946 F.2d at 120 n.2. We are bound by our prior Tenth Circuit precedent. See Lucio-Rayos, 875 F.3d at 582. We conclude, therefore, that we lack jurisdiction to review Robles-Garcia's unexhausted Pereira claim.

**B. The BIA did not err in concluding Robles-Garcia was ineligible to apply for cancellation of removal**

---

1206, 1209-10 (10th Cir. 2007) (recognizing exception to exhaustion requirement to prevent "fundamental miscarriage of justice").

Turning now to the merits of the issue in the petition for review that is properly before us, the question presented is whether Robles-Garcia's 2007 theft conviction was for a crime involving moral turpitude ("CIMT"). This is an issue that Robles-Garcia has administratively exhausted by raising it to the IJ and BIA. We have jurisdiction to consider this legal issue, see 8 U.S.C. § 1252(a)(2)(D), which we review de novo. See Lucio-Rayos, 875 F.3d at 576. Of critical importance here, because the applicant must establish her eligibility for cancellation of removal, see 8 U.S.C. § 1229a(c)(4)(A)(i), it was Robles-Garcia's burden to prove that her theft conviction was not a CIMT that would disqualify her from being eligible for cancellation of removal. See Lucio-Rayos, 875 F.3d at 581-84 (following Garcia v. Holder, 584 F.3d 1288 (10th Cir. 2009)).

We apply a categorical approach to determine whether Robles-Garcia's theft conviction is a CIMT, "comparing the elements of that offense to the [Immigration and Nationality Act's] definition of a CIMT." Id. at 578. "Although the INA does not provide a generic definition of 'crime involving moral turpitude,' . . . established BIA precedent provides that a theft conviction like [Robles-Garcia's] qualifies as a CIMT only if one element of the theft offense is that the perpetrator intended to deprive the victim permanently of his property."[4] Id.

---

[4] BIA precedent now treats a theft involving less than a permanent taking as a CIMT if it involves "circumstances where the owner's property rights are substantially eroded." (A.R. 4 n.1 (citing In re Diaz-Lizarraga, 26 I&N Dec. 847, 853 (BIA 2016).) But the BIA did not apply that definition to this case, which was initiated before the BIA issued Diaz-Lizarraga. (A.R. 4 n.1 (citing Lucio-Rayos, 875 F.3d at 578).)

To decide whether Robles-Garcia's theft conviction required proof that she intended to deprive the victim permanently of his or her property, we look to the ordinance under which she was convicted, Aurora Municipal Code § 94-74(a). That ordinance provides, in relevant part, the following:

> (a) A person commits theft when that person knowingly obtains or exercises control over anything having value less than $1,000.00 of another without authorization, or by threat or deception, and:
>
> > (1) Intends to deprive the other person permanently of the use or benefit of the thing of value;
> >
> > (2) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit;
> >
> > (3) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit; or
> >
> > (4) Demands any consideration to which that person is not legally entitled as a condition of restoring the thing of value to the other person.

(A.R. 269.)

Aurora Municipal Code § 94-74 also has a subsection (b), with which Robles-Garcia was <u>not</u> charged, but which enters into the analysis that follows. That subsection (b) provides:

> (b) It shall be unlawful to knowingly transfer a label or other designation of price from one item to another or alter the item with intent to purchase such item at a lesser cost.

(A.R. 269.)

8

The parties do not dispute that Aurora Municipal Code § 94-74(a) is divisible because it sets forth separate offenses. See Lucio-Rayos, 875 F.3d at 578-81 (holding similar Colorado municipal theft ordinance to be divisible); see also Mathis v. United States, 136 S. Ct. 2243, 2249 (2016) (explaining that a divisible statute "list[s] elements in the alternative, and thereby define[s] multiple crimes"). While subparagraphs 1–3 of § 94-74(a) require proof that the accused intended to deprive the victim permanently of his property, § 94-74(a)(4) does not. See Lucio-Rayos, 875 F.3d at 579-80 (holding almost identically worded Colorado municipal theft provision did not require proof of permanent deprivation). A § 94-74(a) offense, then, is not categorically a CIMT because subsection (4) does not satisfy the test for a CIMT. We, therefore, use the modified categorical approach—considering "the charging documents, jury instructions, plea agreement, plea colloquy, and similar sources," Esquivel-Quintana v. Sessions, 137 S. Ct. 1562, 1568 n.1 (2017)—to determine, if possible, of which § 94-74(a) offense Robles-Garcia was convicted. See Descamps v. United States, 570 U.S. 254, 257 (2013); see also Lucio-Rayos, 875 F.3d at 577-81.

As noted, the documents that Robles-Garcia submitted to the IJ established only that she was charged with, and pled guilty to, violating § 94-74(a). The summons issued to Robles-Garcia, "Summons # J 94028," charged her with violating "§ 94-74(a), theft." (A.R. 344.) She was arraigned on "[t]he charge on the ticket . . . theft." (A.R. 303.) The municipal court, during both her arraignment and her guilty plea, announced that the proceeding was in regard to the same summons, indicating

9

that the charge against Robles-Garcia was not changed or amended before her guilty plea. The documents in the administrative record, then, establish that Robles-Garcia was charged with, and pled guilty to, an offense under § 94-74(a), but they do not further establish which of the four offenses set forth in § 94-74(a) was the crime of conviction.

Based on these documents, the BIA determined that Robles-Garcia was unable to show that her theft conviction was <u>not</u> a CIMT, for two alternative reasons. First, the BIA purported to apply the modified categorical approach to determine that Robles-Garcia was convicted, not under any of the four provisions of § 94-74(a), but instead under § 94-74(b). That was error.

The BIA made that determination based on the actual conduct to which Robles-Garcia admitted during her plea colloquy. As the prosecutor described it,

> [t]his was about $52 worth of merchandise from Gordman's as observed by the shoplifting through the closed circuit system. They observed her switching tags to cheaper gift boxes and cheaper fragrance. She was doing the switch to get the cheaper items than the price was for the items.

(A.R. 312.) Robles-Garcia agreed that is what she did: "I thought it was easy for me to change the prices, and I wasn't stealing though, well, I already know that's stealing too . . . ." (A.R. 312.)

The actual conduct to which Robles-Garcia admitted mirrors the language in § 94-74(b), "It shall be unlawful to knowingly transfer a label or other designation of price from one item to another or alter the item with intent to purchase such item at a lesser cost." (A.R. 269.) In light of that, the BIA, purporting to apply the modified

10

categorical approach, deemed Robles-Garcia to have been convicted under § 94-74(b). But as previously explained, all of the documents in the administrative record indicate that Robles-Garcia was charged with, and pled guilty to, violating § 94-74(a), not (b).

In applying the modified categorical approach, our focus is on the elements necessarily proved or admitted in support of the offense of conviction. See Descamps, 570 U.S. at 257, 260-65; see also Mellouli v. Lynch, 135 S. Ct. 1980, 1986 n.4 (2015) (noting "inquiry into the particular facts" at issue in a given case is "[o]ff limits" when applying modified categorical approach). Where, as here, the documents in the administrative record clearly indicate that Robles-Garcia was convicted under § 94-74(a), the modified categorical approach does not permit a court to determine that the defendant should have been charged and convicted instead under some other statutory provision. Instead, the modified categorical approach can only assist us here in trying to determine under which provision of § 94-74(a) Robles-Garcia was convicted. The answer cannot be some other uncharged provision of that ordinance, like § 94-74(b). The BIA, therefore, erred in concluding Robles-Garcia was convicted of theft under § 94-74(b).[5]

Alternatively, the BIA held that Robles-Garcia could not meet her burden of establishing under which of the four offenses set forth in § 94-74(a) she was charged

---

[5] The facts to which Robles-Garcia admitted in pleading guilty might be helpful, under the modified categorical approach, if the documents in the record indicated that Robles-Garcia was convicted generally under § 94-74. But the documents here already narrowed down for us that Robles-Garcia was convicted under § 94-74(a).

11

and convicted. We agree. Robles-Garcia was unable to provide the BIA with any documents that further narrowed down under which of the four subsections of § 94-74(a) she was convicted. Three of those four offenses are CIMTs because they expressly require proof of a permanent deprivation of property, or of the offender's intent to deprive the victim permanently of property. Nothing Robles-Garcia provided the BIA suggested that her theft conviction was under § 94-74(a)(4), the lone non-CIMT offense under § 94-74(a). Therefore, the BIA correctly determined that Robles-Garcia did not meet her burden of establishing that her Aurora conviction was not a CIMT and, thus, she failed to prove that she is eligible to apply for cancellation of removal. We, therefore, uphold the BIA's decision on that basis.

### III. CONCLUSION

For the foregoing reasons, we DENY Robles-Garcia's petition for review challenging the BIA's determination that she was not eligible to apply for cancellation of removal, and we DISMISS her petition for lack of jurisdiction to the extent that it asserts her Pereira argument for the first time.

12

18-9511, *Robles-Garcia v. Barr*

**HARTZ**, J., Concurring in the judgment and joining in Section II(B) of the opinion.