**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ZULQURNAIN MALIK,

    Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

    Respondent.

No. 19-9586
(Petition for Review)

_____

**ORDER AND JUDGMENT***
_____

Before **HOLMES**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

Zulqurnain Malik, a native and citizen of Pakistan appearing pro se, seeks review

of the Board of Immigration Appeals' (BIA's) decision dismissing his appeal from an

Immigration Judge's (IJ's) removal order. Exercising jurisdiction under 8 U.S.C. §

1252(a), we deny the petition.

---

* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

BACKGROUND

In 2007, while in Pakistan, Malik converted from the Muslim faith to the Christian faith when he married his Christian wife. Six years later, in September 2013, he came to the United States with his wife and was admitted as a lawful permanent resident.

In 2018, he was convicted in Utah state court of, among other things, possessing or using methamphetamine, and he was given a 365-day sentence. The Department of Homeland Security initiated removal proceedings. Malik opposed removal, seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT) because he feared persecution in Pakistan for converting to Christianity.

In April 2019, Malik appeared pro se before an IJ, who found him removable based on his controlled-substance offense. In support of his application for asylum, withholding of removal, and CAT relief, Malik testified that he had never been harmed while living in Pakistan, and that his wife, who returned to Pakistan in 2016, has never been harmed there. Malik expressed his fear, however, that if he returned to Pakistan he would be killed by his family or imprisoned and executed by the government due to his conversion.

The IJ denied Malik's application and ordered him removed to Pakistan. In doing so, the IJ noted that Malik had identified no past persecution. As for fear of future persecution, the IJ found insufficient evidence that either Malik's family or the Pakistani government would view his religious conversion as a violation of the country's blasphemy laws or a reason to otherwise harm him. The IJ found it significant that neither the Pakistani government nor his family had harmed him in any way for the six

2

years he lived in Pakistan after converting to Christianity. Further, the IJ found that he had the ability to relocate to another town to avoid harm from his family. Finally, the IJ found there was insufficient evidence that Malik would be tortured in Pakistan even though "the Pakistani government does engage in some discriminatory practices towards religious minorities." R., Vol. II at 373.

Malik appealed to the BIA through counsel and moved for administrative notice of various documents discussing conditions in Pakistan. The BIA agreed with the IJ's findings, denied Malik's motion, and dismissed his appeal.

## DISCUSSION
### I. Standards of Review

Where, as here, a single BIA member affirmed the IJ's decision in a brief order, we review the BIA's opinion, but "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Neri-Garcia v. Holder*, 696 F.3d 1003, 1008-09 (10th Cir. 2012) (internal quotation marks omitted). We liberally construe Malik's pro se filings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Our review is constrained, however, by Malik's controlled-substance conviction. *See* 8 U.S.C. § 1252(a)(2)(C) ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [8 U.S.C. § 1227(a)(2)(B)]," which applies to aliens who, among other things, have been convicted of a controlled-substance offense). "[W]e may review the removal order only to the extent [Malik] raises constitutional or legal

3

challenges to the order." *Waugh v. Holder*, 642 F.3d 1279, 1281 (10th Cir. 2011); *see also* 8 U.S.C. § 1252(a)(2)(D) (stating that the "limit[ation] or eliminat[ion] [of] judicial review[ ] shall [not] be construed as precluding review of constitutional claims or questions of law raised upon a petition for review").[1]

Recently, the Supreme Court decided two cases that clarify the reach of the jurisdiction-stripping provision of § 1252(a)(2)(C). First, the Supreme Court held that "the application of law to undisputed or established facts is a question of law within the meaning of § 1252(a)(2)(D)." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020) (brackets and internal quotation marks omitted). Second, the Court held that "a noncitizen may obtain judicial review of factual challenges to CAT orders, [but] that review is highly deferential," such that "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (internal quotation marks omitted).

Thus, we review the BIA's application of the asylum and withholding-of-removal legal standards to the settled or undisputed facts in Malik's case, *see Guerrero-Lasprilla*, 140 S. Ct. at 1069, and we review the BIA's CAT decision for substantial evidence, *see Nasrallah*, 140 S. Ct. at 1692; *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016) ("[A]

---

[1] Malik did not administratively contest his removability for having a controlled-substance conviction. "[F]ailure to raise an issue on appeal to the BIA constitutes failure to exhaust administrative remedies with respect to that question and deprives the Court of Appeals of jurisdiction to hear the matter." *Robles-Garcia v. Barr*, 944 F.3d 1280, 1283 (10th Cir. 2019) (alterations and internal quotation marks omitted).

4

request for protection under the CAT involves factual determinations reviewed for substantial evidence.").

## II. Asylum

To qualify for asylum, Malik needed to show he suffered past persecution or that he has a well-founded fear of future persecution on account of his conversion to Christianity. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). Where, as here, an alien seeks asylum based only on fear of future persecution, he must show that his fear is "both subjectively genuine and objectively reasonable." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005).

During the administrative proceedings, Malik established that he subjectively feared returning to Pakistan. But the BIA determined his fear was not objectively reasonable because he had lived in Pakistan for six years after his conversion without being harmed, Malik's Christian wife had not been harmed after returning to Pakistan, and Malik could relocate within Pakistan to avoid his siblings, who "all reside in the same town," R., Vol. II at 4 n.3.

We conclude that the BIA properly applied asylum law to the undisputed facts of Malik's case. First, the reasonableness of an alien's fear of future persecution is indeed undercut by a lengthy absence of persecution in the country of removal. *See, e.g.*, *Lemus-Arita v. Sessions*, 854 F.3d 476, 482 (8th Cir. 2017) (concluding that alien's fear of persecution was only speculative and not objectively reasonable where he "was never harmed or personally threatened and never observed anyone he thought would attempt to threaten or harm him"). Second, the continued presence of an alien's family member in

5

the country of removal without harm is a significant factor in the fear-of-persecution calculus. *See, e.g.*, *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012).[2] And third, "[f]ear of persecution is not well-founded if the applicant can avoid persecution by relocating to another part of the country and it would be reasonable to expect h[im] to do so." *Ritonga v. Holder*, 633 F.3d 971, 976-77 (10th Cir. 2011).[3]

Nevertheless, Malik argues that the BIA erred in two respects when evaluating the reasonableness of his fear. He maintains that "Pakistani society in general is extremely hostile to converts, [and that] attacks on those who have converted can re-occur years o[r] even decades after they have changed their religion." Pet'r's Br. at 5. But Malik does not identify any undisputed or established "specific facts" quantifying the possibility of an eventual attack, 8 U.S.C. § 1158(b)(1)(B)(ii), and such a possibility is simply too speculative to be objectively reasonable, *see Bartolome v. Sessions*, 904 F.3d 803, 814 (9th Cir. 2018) ("Speculation on what could occur is not enough to establish a reasonable

---

[2] Although Malik's wife did not convert to Christianity, she is a Christian, and Malik describes his fear as resulting from both his conversion and his "status as a Christian," Pet'r's Br. at 5. Thus, the fact that his wife has not been harmed in Pakistan detracts from the reasonableness of his persecution fear.

[3] To the extent Malik argues that it "is not possible for him" to relocate, Pet'r's Br. at 8, he contests a factual finding made by the agency, which we lack jurisdiction to review because of his controlled-substance conviction. *See* 8 U.S.C. § 1252(a)(2)(C) (limiting the scope of review where the removal rests upon the alien's commission of certain crimes, including controlled-substance offenses); *id.* § 1252(a)(2)(D) (providing that courts may nevertheless consider constitutional claims or questions of law); *Guerrero-Lasprilla*, 140 S. Ct. at 1067, 1069 (holding that the phrase "questions of law" includes a legal standard's application "to *undisputed* or established facts" (emphasis added)).

6

fear."); *see generally INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987) (requiring "a reasonable possibility" of persecution).

Next, Malik contends the IJ used an erroneous definition of "blasphemy" when finding "insufficient evidence . . . that the government of Pakistan[ ] or . . . [Malik's] family in Pakistan[ ] would view [his] conversion . . . as blasphemy such that he would be subject to the criminal penalties up to and including death outlined in the country condition reports that have been submitted." R., Vol. II at 371. Specifically, the IJ consulted a dictionary and defined "blasphemy" as the "act of insulting or showing contempt or lack of reverence for God, or the act of claiming attributes of a deity." *Id.* As the government points out, however, the BIA, unlike the IJ, did not attempt to define the term, and instead rested its analysis on the three grounds discussed above (six years of unharmed, post-conversion residence in Pakistan; no harm to Malik's wife; and Malik's ability to relocate). Because it is the BIA's decision that controls, any error in the IJ's definition is harmless. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) ("[W]e will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance.").

We conclude that the BIA did not err in denying Malik's request for asylum.

### III.  Withholding of Removal

Because we conclude that Malik failed to satisfy the standards for asylum, he necessarily has failed to meet the more stringent standards for withholding of removal. *See Rodas-Orellana*, 780 F.3d at 987 ("For withholding, an applicant must prove a clear probability of persecution on account of a protected ground." (internal quotation marks

7

omitted)); *id.* ("Failure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim.").

### III. CAT

To obtain relief from removal under the CAT, a petitioner must "prove it is more likely than not that he or she would be tortured if removed to a particular country." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1336 (10th Cir. 2008) (internal quotation marks omitted). The CAT defines "torture" as the "intentional[ ] inflict[ion]" of "severe pain or suffering, whether physical or mental, . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Malik asserts that he is entitled to CAT relief because his return to Pakistan would result in "future persecution [and] torture at the hands of the Muslim extremists and gov[ernment]." Pet'r's Br. at 8. We disagree, as substantial evidence supports the BIA's decision. In particular, as noted above, Malik was not harmed in Pakistan during the six years he remained there after converting to Christianity, and his Christian wife has not been harmed after returning to the country. And while country reports submitted to the IJ indicate that "[p]olice often failed to protect members of religious minorities . . . from attacks," there have been "improvements in police professionalism and instances of local authorities protecting minorities from discrimination and communal violence." R., Vol. II at 472 (Pakistan 2017 Human Rights Report); *see also id.* at 528-29 (2017 Department of State Religious Freedom Report for Pakistan, observing that "authorities often failed to intervene in instances of societal violence against religious minorities," but "police

8

intervention helped to prevent religiously based violence on some occasions"); *id.* at 532-33 (same, observing that "government mediation has prevented intercommunal mob violence" and that courts have "overturned some blasphemy convictions upon appeal"). In short, the evidence in the record does not compel a conclusion that the Pakistani government would acquiesce in any torture Malik might be subject to upon returning to Pakistan. Thus, the BIA did not err in denying CAT relief.[4]

## CONCLUSION

We deny Malik's petition for review. We grant Malik's motion to proceed in forma pauperis. But because 28 U.S.C. § 1915(a)(1) excuses only "prepayment of fees," Malik remains responsible for paying the full docketing and filing fee to the Clerk of this Court.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[4] To the extent Malik claims the BIA violated his due-process rights by not taking administrative notice of additional documents detailing the conditions in Pakistan, we disagree. Although the BIA may take "administrative notice of commonly known facts such as current events or the contents of official documents," 8 C.F.R. § 1003.1(d)(3)(iv), it is not required to do so. *Meriyu v. Barr*, 950 F.3d 503, 507 (7th Cir. 2020). Further, Malik does not indicate how the additional documents would have differed, if at all, from the two reports submitted during the removal proceedings before the IJ. "To prevail on a due process claim, an alien must establish not only error, but prejudice." *Barrera-Quintero v. Holder*, 699 F.3d 1239, 1249 (10th Cir. 2012) (internal quotation marks omitted). Malik has not shown either that the BIA erred in declining to administratively notice his additional documents or that he suffered prejudice as a result of that decision.

9